UNITED STATES, Appellant

v.

DAVID DOWNS, JR., Stewardsman, U. S. Navy, Appellee

3 USCMA 90, 11 CMR 90

No. 2544

Decided July 17, 1953

CAPT Wesley C. Blake, USMC, for Appellant.
CDR Howard A. Patrick, USN, and CDR Francis X. Driscoll, USN, for Appellee.

Opinion of the Court

PAUL W. BROSMAN, Judge:

The essential probative facts of this case come to this. The appellant, Downs, enlisted in the United States Navy on December 7, 1946, for a period of four years. The enlistment was, on December 6, 1950, involuntarily extended for one year—so that his term of obligated service was scheduled to expire on December 6, 1951. Sometime prior to October, 1951, accused met with an accident in line of duty in which he sustained a broken leg, and, in October, 1951, he was transferred to the United States Navy Hospital, Portsmouth, Virginia, for hospitalization and medical treatment. He was retained at the hospital beyond the period of his enlistment—in fact, until June, 1952—when he was granted leave for thirty

days to visit his home. He did not return to the hospital at the expiration of this leave, but instead, and after an unauthorized absence of some two and a half months, was apprehended and delivered to the United States Naval Receiving Station, United States Naval Base, Charleston, South Carolina.

## II

On the basis of this evidence, Downs was charged with, and convicted by general court-martial of, desertion with intent to remain absent permanently, as proscribed by the Uniform Code of Military Justice, Article 85 (a) (1), 50 USC § 679 (a) (1). The conviction was approved by the convening authority. However, upon review by a board of review in the office of The Judge Advocate General, United States Navy, the findings of guilty were set aside on the ground that the court-martial lacked jurisdiction. More specifically, the position of the board of review was that the Navy had lost jurisdiction over the person of the accused following the arrival of the extended expiration date of his enlistment, namely, December 6, 1951—save for the limited purpose of retaining him within service control for hospitalization and medical care. Thereupon, The Judge Advocate General, United States Navy, certified to this Court the question set out below:

"Is it an offense for an enlisted man, who has been retained in the service beyond the expiration date of his enlistment in order that he may receive medical and hospital care for an injury incurred in line of duty prior to the expiration of his enlistment, to fail to return from an authorized leave?"

## III

We prefer to restate the issue as involving the simple question of whether, under the facts of this case, the accused remained subject to court-martial jurisdiction beyond the expiration date of his enlistment—no formalities of discharge having been accomplished. In the course of its ably developed opinion, the board of review has cited numerous authorities to the effect that the expiration of a period of enlistment effectively—and of its own force—operates as a discharge from the Naval service. We believe, however, that these authorities are inapplicable to the factual situation presented in this case.

It was quite possible for the accused, under applicable provisions of the Bureau of Naval Personnel Manual, to have been retained in service lawfully, with his consent, after the expiration of his enlistment period for treatment and care of an injury incurred in line of duty. However, accepting the view of the board that no specific attempt at compliance with those provisions was made, it does not at all follow that accused was thereby relieved of subjection to military law. It has been settled for almost a century that a valid enlistment may be effected through acceptance of the benefits thereof. 1918 Op JAG 488. Although the authorities included within the preceding citation did not deal specifically with Navy enlistments, our attention has been directed to none which indicate that Navy enlistments differ fundamentally from those in other services. Moreover it does appear that the Navy has recognized that one may effect a de facto enlistment and thus become subject to court-martial jurisdiction in the absence of de jure status. Naval Courts and Boards (1937) § 333. After December 6, 1951, the accused, in fact, and quite voluntarily, continued to accept numerous benefits extended to him by the United States Navy. He was accorded medical attention and care, was fed, clothed, and sheltered. We may note as well from allied papers with the record of trial that he was carried in a full pay status until the very date of inception of the unauthorized absence alleged against him. Although this latter fact was not developed as a part of the evidence before the court-martial, we are without doubt that it may properly be considered by us in its bearing on the limited question of jurisdiction. The net of this—to our minds—is that a voluntary and indeterminate extension of accused's enlistment was effected for the purpose of this case.

An enlistment is a contract—not an ordinary contract but one which accom-

plishes a change in status. United States v. Grimley, 137 US 147, 34 L ed 636, 11 S Ct 54; In re Morrissey, 137 US 157, 34 L ed 644, 11 S Ct 57. The contract relationship, voluntarily established at the beginning of the enlistment, could be—and here was—extended by the mutual consent of the parties thereto. Whether the accused could have been restrained involuntarily for the purpose of medical treatment beyond the expiration date of his period of service, we need not now decide. In any event, upon the expiration thereof under the facts of this case, it was not within his power to effect his own discharge by any means which might seem satisfactory to him under other circumstances—doubtless in the ordinary case—upon refusal by the Naval authorities to issue the discharge to which he was entitled, he might have instituted appropriate judicial proceedings to compel his release. However, the doctrine of self-help was not open to him here. Because of the compelling necessity for an orderly separation procedure, he cannot be permitted to take the law into his own hands. Until discharged through one of the "recognized legal modes of separation from the service", he remained a military person subject to the sanctions of military law. See Winthrop's Military Law and Precedents (1920 Reprint) 89; Dig Op JAG (1912–1940) § 467. Accordingly, the accused here was, at the date of his failure to return from leave, subject to military law, and his unauthorized absence was unlawful and subject to punishment. The court-martial before which he was tried for desertion was not without jurisdiction.

IV

As restated by us, the question certified by The Judge Advocate General, United States Navy, is, therefore, answered in the affirmative. The record is returned to that officer for reference to the board of review for reconsideration and disposition not inconsistent with this opinion.

Chief Judge QUINN and Judge LATIMER concur.