UNITED STATES, Appellee

v.

LEONARD W. KLUNK, Private First Class, U. S. Marine Corps, Appellant

3 USCMA 92, 11 CMR 92

No. 2433

Decided July 17, 1953

CDR Howard A. Patrick, USN, and CDR John J. Nelson, USNR, for Appellant.

CDR Thomas E. Blade, USN, for Appellee.

Opinion of the Court·

PAUL W. BROSMAN, Judge:

A general court-martial convened at Quantico, Virginia, convicted the accused, Klunk, of desertion of the permanent absence type, the offense defined by the Uniform Code of Military Justice, Article 85(a)(1), 50 USC § 679(a)(1). Following approval by the convening authority, the case was considered by a board of review in the office of The Judge Advocate General, United States Navy. All members of the board concurred in holding that there was insufficient evidence of an intention to remain away permanently, and hence that the conviction could only be affirmed insofar as it extended to guilt of absence without leave, in violation of Article 86 of the Code, supra, 50 USC § 680.

The problem giving rise to the issue now before this Court is related to the maximum sentence which might lawfully be imposed. Accused's enlistment, it appears, expired on July 14, 1952, 32 days after the inception of his unauthorized absence on June 12, 1952, and 38 days before the termination of this absence by apprehension on August 21, 1952. It will be recognized, of course, that a direct relationship exists between the length of an unauthorized absence and the maximum sentence imposable. Manual for Courts-Martial, United States, 1951, paragraph 127c, Section A, Table of Maximum Punishments. The question has to do with whether a legal sentence may be imposed on the basis of the entire term of the absence, or whether it must be adjudged only on that of the period up to and including the date of expiration of the enlistment. The majority of the board of review concluded that the accused properly could be charged with the entire period of absence and accorded a sentence based thereon. One member dissented. In his view, the unauthorized absence was terminated automatically on the expiration of accused's enlistment, July 14, 1952. Following this action of the board of review, The Judge Advocate General, United States Navy, certified this question to the Court:

"Is the sentence excessive as approved by the Board of Review?"

II

The answer to the question put by The Judge Advocate General turns, of course, on whether the expiration of accused's enlistment, without more—and while he occupied a status of unauthorized absence — terminated his absence without leave as a matter of law.

Had the present problem arisen in the Army or Air Force, no difficulty whatever would have been presented—for the reason that in those services the running of a term of enlistment is tolled during an unauthorized absence of more than a day's duration. 64 Stat 145, 10 USC § 629. In the Navy, however, the decision as to whether time lost through unauthorized absence during an enlistment shall be "made good" is one for the individual concerned. That is to say, he serves or does not

do so as he sees fit. 45 Stat 620, 34 USC § 183a; Bureau of Naval Personnel Manual, Art C–10304(4)

The roots of our answer here must lie, we think, in our opinion in United States v. Downs (No. 2544), 3 USCMA 90, 11 CMR 90, decided this date. One's amenability to military law and court-martial jurisdiction does not necessarily cease with the mere expiration of the period of enlistment. Certain formalities of discharge are distinctly contemplated—and, while a military person is awaiting their accomplishment, he remains fully subject to the terms of the Uniform Code of Military Justice, as specifically provided in its Article 2(1), 50 USC § 552(1). As a matter of common sense and basic necessity, the procedure of discharge or separation must be an orderly one. If the accused, Klunk's, unauthorized absence ended ipso facto through expiration of his enlistment, then he, or any other person in the Naval service, would be wholly free to stalk from his duty station at the moment of such expiration without let or hindrance. Manifestly, this is indeed the antithesis of order, and could only lead to a minor sort of chaos, at least. Hence—until the regular processes of discharge have been completed, a Naval enlisted man's status as one subject to military control remains unchanged, the expiration of his enlistment through lapse of time notwithstanding. One who renders impossible the accomplishment of these procedures through his own unauthorized absence is without standing to complain. A refusal by the proper authorities to grant a discharge to one fully entitled thereto would, of course, present a different problem—and one which we need not and do not pass on here. See United States v. Downs, supra. It follows from the foregoing that the status of the accused here as a military person was not dissolved through the expiration of his enlistment on July 14, 1952.

### III

In coming to the conclusion we have reached, we have not overlooked authority which—it has been urged—points in a contrary direction. The Attorney General of the United States, in 1876, rendered an opinion in which he ruled that a contract of enlistment constitutes an engagement for a definite period, which must be regarded as ended at the time of the expiration of the term thereof—this although the date of termination falls during a period in which an accused is in a desertion status. 15 Op Atty Gen 152, 161–162. The force of this position may have been weakened to some extent as a result of the opinion of a more recent occupant of that office. There it was held that the crime of desertion is complete at the moment of inception of an unauthorized absence with intent to abandon the service—with the result that an accused will be deemed to have committed the offense despite the expiration of his enlistment term at some date following the onset of the original absence, and before his return to military control. 33 Op Atty Gen 121, 126. However, the earlier of these two opinions was recently followed by a Navy board of review in United States v. Taylor, NCM 133, 4 CMR 450. Thus, it appears that the first pronouncement has not, in fact, been relegated to the archives.

It is to be observed that each of the cited opinions of the Attorney General deals with the crime of desertion—an offense in which the period of unauthorized absence per se does not occupy the position of controlling significance it enjoys in the present case. It has, therefore, been urged that they may be distinguished on this ground. However this may be, they are not controlling on us in our decision here. Hence, to the extent to which they may be in conflict with the views we have announced herein, we regard them as unsound and unhesitatingly reject them. A recent opinion of the Court of Claims is more nearly in accord with the view we take here. Peiffer v. United States, 96 Ct Cls 344.

Accordingly the question certified by The Judge Advocate General is answered in the negative.

Chief Judge QUINN and Judge LATIMER concur.