**UNITED STATES**

v.

Private (E–1) Timothy SIMPSON, 241–78–6607, U. S. Army, Company B, 2d Battalion, 28th Infantry, 8th Infantry Division, APO New York 09185.

**SPCM 10078.**

U. S. Army Court of Military Review.

20 Aug. 1975.

Appellate counsel for the Accused: CPT Leslie Wm. Adams, JAGC; CPT Anthony J. Siano, JAGC; LTC James Kucera, JAGC; Col Victor A. De Fiori, JAGC.

Appellate counsel for the United States: CPT Russell S. Estey, JAGC; MAJ Steven M. Werner, JAGC; LTC Donald W. Hansen, JAGC.

OPINION OF THE COURT

O'DONNELL, Judge:

Despite his pleas to the contrary, the appellant was convicted of two periods of unauthorized absence, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. He was sentenced to be discharged from the service with a bad-conduct discharge, to be confined at hard labor for three months, to forfeit $216.00 pay per month for three months, and to be reduced to the lowest enlisted grade. The convening authority approved the sentence.

The appellant contends, as he did at trial, that the court-martial lacked jurisdiction over him because his term of enlistment had expired. The salient facts are relatively simple and uncontroverted. In March of 1973, the appellant was stationed with his unit in Mainz, Germany. On 23 March, he was admitted to an Air Force Hospital at Wiesbaden, Germany for an abscess of the scrotum. The appellant's term of service, adjusted for time lost as a result of previous unauthorized absences, was scheduled to expire on 2 April 1973. As that date drew near and the appellant remained in the hospital, he informed his doctor, a Turkish national employed by the Air Force, that his expiration date was approaching and that he wished to be released from active duty. When 2 April came and passed, the appellant complained daily to his doctor about being retained beyond his separation date. The doctor testified that he himself took no action on the appellant's request because he believed that the matter would be handled administratively by others.

While the appellant was hospitalized, he did not communicate with anybody in the hospital other than his doctor concerning his retention, nor did he contact anybody from his unit. The appellant testified, however, that when he first arrived at the hospital, he mentioned his imminent expiration date to the hospital registrar. The registrar did not testify at the trial. From 23 March to 2 April, because of the contagious nature of his disease, the appellant had been isolated and confined to one room. Afterwards, he was permitted to move about the hospital ward.

The appellant was released from the hospital on 20 April. He proceeded directly to his unit. However, as most of the unit was in the field, the appellant did not talk to anybody in a position of authority concerning his status. The appellant then left and remained away from the unit until he was apprehended and returned on 17 August 1973. The appellant testified that he left because he believed that he was no longer a member of the Army.[1]

On 24 August 1973, the appellant's company commander preferred charges against the appellant alleging an unauthorized absence from 20 April to 17 August 1973. The appellant was placed under guard from 17 August until 7 September, when the guard was removed. As soon as the restraint was lifted, the appellant again left the unit and remained away until he voluntarily returned on 3 December 1973. The appellant testified that upon his initial return on 17 August he informed the appropriate authorities that he believed he was out of the Army. According to the appellant, he remained with his unit from 17 August until 7 September only because he was restrained but that as soon as the restraint was lifted on 7 September, he again left as he still felt that he was a civilian. The appellant returned on 3 December because "he wanted to get the whole thing straightened out."

Upon the expiration of his enlistment, a member of the military is entitled to be separated from active duty. *United States v. Hout*, 19 U.S.C.M.A. 299, 41 C.M.R. 299 (1970). There are circumstances, however, under which a member may be held beyond his expiration date. Thus, an enlisted member may, with his consent, be retained beyond his term of enlistment for medical

---

1. The military judge instructed the court on the affirmative defense of honest and reasonable mistake of fact. By its general findings of guilty, the court found against the appellant on that point.

treatment for a disease or injury incurred incident to service. Section 507, Title 10, United States Code.[2] Secretarial regulations in implementation of this statutory authority set forth detailed procedures to be followed before a person may be held beyond his term of service. At the time in question, these regulations provided that the service member must first be counseled by an officer authorized to administer oaths under Article 136 of the Code, 10 U.S.C. § 932. This officer would explain the advantages of retention and would have him execute an affidavit stating whether he desired retention. The regulation provided further that no person could be held beyond the expiration of his term of service for medical treatment without his written consent in affidavit form [3] and that those persons who did not provide such consent would be discharged or released from active duty on the date of expiration of term of service. A hospitalized person who is so discharged or released from active duty would be permitted to remain in the hospital at his own expense and without military status if because of his medical condition he was physically unable to leave. Paragraph 2-6, Army Regulation 635–200, 15 July 1966 (Change 32, 3 November 1971). None of these provisions were followed with respect to the appellant.

At trial, the appellant moved to dismiss the charges on the basis of lack of jurisdiction. The judge made specific findings as follows: the appellant should have been discharged on 2 April 1973; the United States Army was negligent in not taking the necessary steps to effect the appellant's separation, especially upon his release from the hospital; the appellant demanded his release and the Government was bound to grant it; the appellant was not satisfied to remain on active duty and the limited bene-

fits that accrued to him were not accepted voluntarily; [4] the appellant's medical condition was such that his release from the hospital would be a danger to himself and others and that common sense and the dictates of safety required that he be retained; and that the appellant's retention was not essential and was involuntary. The judge concluded, however, that jurisdiction over the appellant had not terminated, citing Article 2 of the Code, 10 U.S.C. § 802 and the Court of Military Appeals decision in *United States v. Downs,* 3 U.S.C.M.A. 90, 11 C.M.R. 90 (1953).

In *Downs,* the accused, a Navy enlisted man, was scheduled to be released from active duty in December, 1951. In October of that year, he was hospitalized for an injury received in line of duty. He was retained in the hospital until June of 1952, when he was granted leave for thirty days. He failed to return to the hospital at the expiration of leave and was apprehended after an absence of two and a half months. He was convicted of desertion. The Court of Military Appeals held that the accused remained subject to court-martial jurisdiction notwithstanding the failure of the naval authorities to obtain the accused's express consent to be retained beyond the expiration of his term of service. The Court concluded that by voluntarily accepting certain benefits—medical attention, food, clothing, shelter and pay—the accused effected a de facto extension of his enlistment, thereby remaining subject to court-martial jurisdiction. The Court noted that, under the facts of that case, the accused could not resort to self-help because of the "compelling necessity for an orderly separation procedure," and that until formally discharged, he remained subject to the Code. 3 U.S.C.M.A. at 92, 11 C.M.R. at 92. *See United States v. Klunk,* 3 U.S.C.M.A. 92, 11 C.M.R. 92 (1953).

2. "An enlisted member of an armed force on active duty whose term of enlistment expires while he is suffering from disease or injury incident to service and not due to his misconduct, and who needs medical care or hospitalization, may be retained on active duty, with his consent, until he recovers to the extent that he is able to meet the physical requirements for reenlistment, or it is determined that recovery

to that extent is impossible." 10 U.S.C. § 507(a).

3. Special provisions were made for mentally incompetent personnel.

4. The appellant testified that he received no pay or allowances after February 1973.

In a more recent case, a divided court found jurisdiction over an accused who was held beyond his expiration date with a view to trial for offenses committed before that date. *United States v. Hout, supra.* In that case, the accused's term of enlistment was due to expire on 14 January 1968. On 11 January, he was questioned by law enforcement personnel concerning suspected larcenies. On the same day, an administrative hold designed to retain the accused on active duty was effected, but charges were not preferred until 30 September 1968. Following his retention, the accused took no action to obtain his separation until after charges had been preferred on 30 September. Chief Judge Quinn held, in effect, that the accused consented to his retention on active duty and that as a consequence he continued in the status of a person subject to court-martial jurisdiction. In the words of Chief Judge Quinn:

"When no good cause exists to retain [a serviceman] beyond expiration of the enlistment the serviceman may demand his release, and the Government is bound to grant it. However, if the Government does not affirmatively act to effect his discharge and the accused is satisfied to remain on active duty, the existing status is continued. Performance of assigned duties and receipt of the emoluments and benefits of his rank indicate the serviceman's consent to continuation of his status. . . . Should the serviceman indicate a desire to be discharged, as provided by his enlistment, the Government must comply with his request within a reasonable time or risk the conclusion that his continued performance of duty was not consensual but involuntary. . . ." (19 U.S.C.M.A. at 301, 41 C.M.R. at 301; citations omitted.)

The Chief Judge found implied consent in view of the evidence that the accused performed his assigned duties without protest, that he returned voluntarily to the base each day from his off-base apartment, that he applied for and received thirty days leave, and that he received pay and allowances from January through September.

Chief Judge Quinn also held that until 30 September, the accused was absolutely entitled to be discharged, upon request. Once charges were preferred, however, he could be retained over his objection. *See* paragraph 11*d*, Manual for Courts-Martial, United States, 1969 (Revised edition).

Judge Darden concurred in the result. He concluded that the interrogation and the administrative hold on 11 January constituted "commencement of action with a view to trial" within the meaning of paragraph 11*d*, Manual, *supra*, and accordingly that the accused at all times remained subject to court-martial jurisdiction.

Judge Ferguson dissented. He agreed with Chief Judge Quinn that the administrative hold was insufficient to continue jurisdiction under paragraph 11*d* of the Manual. However, Judge Ferguson would hold that the accused did not consent to retention on active duty but was merely unaware that he could demand his discharge. Therefore, as the Government did not follow its own regulations and as there was no valid reason for holding the accused, jurisdiction was lost.

The instant case differs from both *Hout* and *Downs* in several significant respects. At no time did appellant consent to his retention, either expressly or by implication. He performed no military duties after 2 April, except in connection with his hospitalization. He received no pay and allowances after that date, nor for that matter since the previous February. He accepted no benefits after 2 April other than those connected with his medical treatment—and he received those over protest.

Unlike *Downs*, where there was no protest at all, and unlike *Hout*, where the accused protested only after charges had been preferred, the appellant in the instant case complained before the expiration of his term of service, as well as after. Perhaps the most decisive distinction is that the Government in the case *sub judice* never took any affirmative action designed to hold the appellant beyond his normal term until termination of the first absence on 17 August.

Presented in this posture, the determinative issue becomes the effect of the appellant's protests. The appellant did not direct his demands for release to his commanding officer or to the administrative personnel in his unit or at the hospital, but only to his doctor, who took no action.[5] Unquestionably, the appellant could have done more—at least when he became ambulatory. But neither are the military authorities without fault in the matter. The appellant's company commander knew he was in the hospital and that he was scheduled to return to the United States for separation. The appellant's redeployment orders had been published at division headquarters. These orders directed the appellant to report to Fort Jackson, South Carolina, on 1 April 1973 for separation and specified a port call date between 24 and 28 March.

Under the circumstances, we hold that the Government is estopped to contend that the appellant remained subject to court-martial jurisdiction. In so concluding, we have not overlooked Article 2(1) of the Code, which provides pertinently that persons "awaiting discharge after expiration of their terms of enlistment" remain subject to the Code. That provision is designed to permit the Government to accomplish an orderly separation or discharge[6] and not to relieve it from the consequences of its own negligence. Moreover, the appellant's company commander testified that he believed it was unnecessary to take affirmative action to extend the appellant's enlistment because of an alleged unauthorized absence

from 22 to 27 February 1973 which would extend the enlistment by operation of law.[7] This demonstrates a conscious attempt on the part of military authorities to proceed under one of the recognized methods for retention beyond the normal term of enlistment. Having failed in this regard, and having failed to follow the procedures required by its own regulations, the Government cannot now contend that the appellant remained subject to the Code under Article 2(1).[8]

The findings of guilty and the sentence are set aside. The charges are dismissed.

Senior Judge JONES and Judge FELDER concur.

5. As noted previously, the appellant testified that upon entering the hospital he informed the registrar of his anticipated separation.

6. See United States v. Klunk, 3 U.S.C.M.A. 92, 94, 11 C.M.R. 92, 94 (1953).

7. An enlisted member of the Armed Forces is required to make up time lost as the result of an unauthorized absence of more than one day, "as determined by competent authority." Section 972, Title 10, United States Code. For reasons not made clear by the record of trial, the appellant's enlistment was not extended as the result of an unauthorized absence in February of 1973, even though there was a substantial amount of time in which to comply with the proper procedure. In any event, as the

putative absence was only 5 days long, the extension would only have been until 7 April.

8. See United States v. Brown, 23 U.S.C.M.A. 162, 48 C.M.R. 778 (1974); United States v. Kilbreath, 22 U.S.C.M.A. 390, 47 C.M.R. 327 (1973); United States v. Russo, 23 U.S.C.M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975). See also United States v. Walker, 47 C.M.R. 288 (ACMR 1973). As the Court of Military Appeals stated in United States v. Russo, supra (p. 135 of 1 M.J.): "It is well-settled that a government agency must abide by its own rules and regulations where the underlying purpose of such regulations is the protection of personal liberties or interests."