**UNITED STATES**

**v.**

Private First Class Roberto C. TORRES, 519–72–6768, U. S. Army, Headquarters and Headquarters Company, 2d Battalion, 39th Infantry, Fort Lewis, Washington, 98433.

CM 434662.

U. S. Army Court of Military Review.

28 April 1977.

Appellate Counsel for the Accused: CPT Robert H. Herring, Jr., JAGC; CPT D. David Hostler, JAGC; LTC John R. Thornock, JAGC; COL Robert B. Clarke, JAGC.

Appellate Counsel for the United States: CPT Richard A. Kirby, JAGC; MAJ Michael B. Kennett, JAGC; COL Thomas H. Davis, JAGC.

## OPINION OF THE COURT

En Banc.

JONES, Senior Judge:

Charged with housebreaking, willful destruction of military property, and larceny (nine specifications), the appellant was convicted only of housebreaking and one count of attempted larceny in violation of Articles 130 and 80, Uniform Code of Military Justice, 10 U.S.C. §§ 930 and 880. We are reviewing the case pursuant to Article 66, UCMJ.

The charges arose out of the entry by appellant and another into a barracks occupied by appellant's unit which was on temporary duty from Fort Lewis to Alaska. Appellant, a member of the rear detachment of the unit, was supposed to be guarding the building and the property therein.

Appellant's involvement in the break-in and theft was established immediately. He was confined on 18 November 1975, charges were preferred on 28 November 1975,[1] the Article 32 investigation was conducted during the period 9–29 December 1975, charges were referred to trial on 7 January 1976, and the trial held on 16, 23 and 24 January 1976.

At trial, appellant raised the question of jurisdiction of the court-martial over his person because he was beyond the expiration of his term of service (ETS)[2] and the convening authority had taken no action to retain him on duty as required by paragraph 2–4a, AR 635–200.[3] On appeal the issue has properly been refined to one of whether the Government was precluded from exercising its jurisdiction over the appellant because it had failed to comply with its own regulation concerning retention beyond ETS, rather than whether the court-martial in fact had jurisdiction over the person.

1. Initially the three charges contained a total of 61 specifications; after the Article 32 investigation the number of specifications was reduced and the larceny charges redrafted and repreferred.

2. Counsel stipulated that appellant's ETS was 27 December 1975 but appellant's service record admitted at trial establishes an ETS of 3 January 1976. However, we will accept the date of 27 December 1975 for purposes of this review.

3. 2–4. When investigation is initiated with view to trial by court-martial or member is awaiting trial or result of trial.

a. A member may be retained beyond the expiration of his term of service by a general court-martial convening authority, or his designee, when an investigation of his conduct has been initiated with a view to trial by court-martial; charges have been preferred; or the member has been apprehended, arrested, confined, or otherwise restricted by the appropriate authority. However, if charges have not been preferred, the member shall not be retained more than 30 days beyond the expiration of his terms of service without the personal approval of the general court-martial convening authority concerned.

■ Jurisdiction of the court-martial over the person of this appellant is based on Article 2, UCMJ, 10 U.S.C. § 802, which provides:

"Article 2. Persons subject to this chapter.

The following persons are subject to [the Uniform Code of Military Justice]:

(1) Members of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment, . . ."

As a member of the active Army awaiting discharge after his term of enlistment had expired, appellant came within the category of persons described by that provision. The expiration of his enlistment, by the very language quoted above, did not operate automatically to terminate jurisdiction. Rather, the appellant remained subject to jurisdiction until affirmative action, the formalities of discharge, was taken to discharge him. *United States v. Klung*, 3 U.S. C.M.A. 92, 11 C.M.R. 92 (1953).

That a serviceman remains subject to court-martial jurisdiction after his term of service expires but before his discharge has been the law for more than a century. It is set forth by Colonel Winthrop in his well-known treatise as follows:

"It is held . . . that if before the day on which his service legally terminated and his right to a discharge is complete, proceedings with a view to trial are commenced against him,—as by an arrest or the service of charges,—the military jurisdiction will fully attach, and once attached may be continued by a trial by court-martial ordered and held after the end of the term of the enlistment." Winthrop, Military Law and Precedents, 90, 91 (2d ed. 1920 Reprint).

This rule which is currently restated in paragraph 11*d*, Manual for Courts-Martial, United States, 1969 (Revised edition), goes back at least to the case *In Re Walker*, 3 Am.Jurist 281 (Mass.1830). Its purpose is

explained by Judge Alley in *United States v. Calley*, 46 C.M.R. 1131 (A.C.M.R.1973):

"The reason for the rule is clear, and can best be stated negatively. If no such rule existed, enforcement of military law would not be possible as to offenses committed or discovered shortly before one's scheduled date of separation." 46 C.M.R. at 1142.

The applicability of and the compliance with paragraph 11*d*, MCM, 1969 (Rev. ed.), is not questioned here. All agree that the filing of charges and placing the appellant in pretrial confinement were proceedings with a view to trial which were taken prior to the expiration of appellant's enlistment. If nothing more were involved, the jurisdictional issue would end there. It does not, however, because the Government in 1967 chose to include a paragraph in Army Regulation 635–200 on this subject. With subsequent changes, that provision evolved into its form at the time of this offense.[4]

■ The Army in effect has placed more stringent requirements on its exercise of jurisdiction over servicemen after their term of service has expired than is required by the long-existing law set out above, but that is permissible. *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). The more stringent requirements are that retention beyond ETS must be approved by the general court-martial convening authority or his designee, or if no charges are preferred within 30 days, retention must be personally approved by the convening authority. It was stipulated by the parties that neither the convening authority nor any designee took any action regarding the appellant's retention beyond his ETS date.

The appellant points to the line of cases applying the *Accardi*[5] doctrine to the military in the following language:

"A government agency must abide by its own rules and regulations where the underlying purpose of such regulations is

---

4. Note 3, *supra*.

5. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

the protection of personal liberties and interests." *United States v. Dunks,* 24 U.S.C.M.A. 71, 51 C.M.R. 200, 1 M.J. 254 (1976); *United States v. Russo,* 23 U.S.C.M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975); *United States v. Walck,* 54 C.M.R. 308, 2 M.J. 551 (A.C.M.R.1976). He argues that the Government was bound by its regulation and as it did not follow the regulation, it was precluded from exercising jurisdiction in the court-martial.

The Government counters first with the proposition that the command complied with the regulation; and second, assuming the regulation was not followed, the lack of compliance did not require dismissal of the charges.

No evidence was presented at trial or to this Court on the intentions of the drafters of the regulation in changing paragraph 2–4a into its present form. We are left to our resources in interpreting its meaning. In making that interpretation we believe the regulation should be consistent with the statement of the law contained in paragraph 11*d* of the *Manual.*

The regulation obviously contemplates some action by the convening authority or his designee approving the retention of a member beyond his ETS for purpose of trial. It is silent, however, as to when, how, and to some extent by whom this may be accomplished.

■ First, the regulation does not state when the convening authority or his designee must give his approval. If the regulation were read to require such action prior to ETS it would defeat the very purpose for which the law allows jurisdiction to continue beyond ETS. Therefore, we hold that such action may be either before or within a reasonable time after ETS. *Cf. United States v. Hout,* 19 U.S.C.M.A. 299, 41 C.M.R. 299 (1970).

■ Second, the regulation is silent concerning the method of expressing approval for retention. We believe that any act which can reasonably be interpreted as manifesting an intention to retain a member for trial is sufficient, and we so hold.

Certainly nothing is more indicative of that intent than referral of charges to trial. We find no merit to the contention that the convening authority's action was not a knowing approval of retention beyond ETS for purpose of trial. Although the ETS date was not specifically listed in the pretrial advice, it could be computed from the charge sheet which was attached as an inclosure to the advice. We may presume the convening authority was aware of that information. In any event it is inconceivable that his decision to refer the case to trial would have been any different with or without such information.

■ We therefore find that the general court-martial convening authority's action in referring the case to trial on 7 January 1976 was the necessary approval for retention contemplated by the regulation. This makes it unnecessary to consider who may be designees within the meaning of the regulation.

Even were we to find no compliance with the regulation we would not reach a different result in this case because of our views on the question of the remedy to be applied in a case where the Government fails to follow its own regulation.

■ The appellant maintains the only remedy available when the Government fails to follow its own regulation is dismissal of the charges. He cites our opinions in *United States v. Walck, supra; United States v. Simpson,* 51 C.M.R. 218, 1 M.J. 608 (A.C.M.R.1975); and *United States v. Kalt,* 50 C.M.R. 95 (A.C.M.R.1975), in support of his contention. We disagree with appellant's position as we believe dismissal to be but one of several possible remedies.

The most reasonable remedy and the one followed by the courts whenever appropriate is to set aside the action that has been taken contrary to the regulation and require further proceedings in compliance with the regulation. That was the remedy directed by the Supreme Court of the United States in *Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954),

the basic case in this field; and by the Court of Military Appeals in *United States v. Dunks, supra,*[6] a recent military case based on *Accardi.*

■ Such a remedy is inappropriate, however, in those situations where once the action proceeds in noncompliance, there is no effective way the procedures can be rolled back and compliance required. The question then becomes one of prejudice to the accused as a result of the noncompliance. *Peavy v. Warner,* 493 F.2d 748 (5th Cir. 1974). We must look at what right has been infringed and what adverse result has occurred because of the failure to follow the regulation.

■ Assuming noncompliance for the purpose of applying such a standard in this case, we can perceive no prejudice to appellant from the Government's failure to comply with its regulation. To say that appellant has had to remain in the service beyond his ETS and endure a criminal trial is to presuppose that he would have been released from service without trial had the regulation been followed. We find that to be such a remote possibility in this case as to be almost nonexistent. If the question had been presented to the convening authority prior to appellant's ETS, we are convinced that appellant would be in the same position he is in today—standing before this Court convicted of the offenses of housebreaking and attempted larceny.

We further find no reason to penalize the Government in this case to insure compliance with the regulation in the future. Noncompliance is not in and of itself a violation of a basic constitutional right so as to require such a drastic measure as dismissal of the charges. Accordingly, we hold that each case must be examined for prejudice to the accused in determining what remedy to apply when the Government fails to comply with its own regulation.[7] Finding no prejudice here, there is no relief to be given.

The staff judge advocate incorrectly advised the convening authority that the maximum period of confinement in this case was 15 years instead of 5½ years. The trial defense counsel made no comment on this error in rebuttal to the post-trial review. His action amounted to a waiver. *United States v. Mhyrberg,* 2 M.J. 534 (A.C.M.R. 1976). We find no manifest miscarriage of justice as we find no reasonable possibility that the convening authority would have approved a lesser sentence had he been properly advised.

The assigned error alleging appellant's confession was improperly admitted into evidence has been considered but does not warrant discussion. We are convinced that appellant was properly advised in accordance with Article 31, U.C.M.J., and *United States v. Tempia,* 16 U.S.C.M.A. 629, 37

6. The Court of Military Appeals set aside the findings and sentence to permit appellant to take his administrative appeal to the CINCUSAREUR on the denial of his request for dismissal of charges under the USAREUR 45-day speedy trial rule. If the CINC granted the appeal, the charges would then be dismissed pursuant to the regulation. If he denied the appeal, the Court would authorize a rehearing.

7. To the extent the differing facts in *United States v. Walck,* 54 C.M.R. 308, 2 M.J. 551 (A.C.M.R.1976) (accused held almost two months beyond his ETS before convening authority acted to approve retention by referring case to trial, notwithstanding accused's demands for release), distinguish it from the case at bar, the results are not inconsistent. However, to the extent that *Walck* holds (a) that failure of the Government to comply with its own regulation divests the court of jurisdiction

to try the accused, and (b) that the sole remedy is, dismissal of charges, we expressly overrule that decision.

We find no inconsistency between *United States v. Kalt,* 50 C.M.R. 95 (A.C.M.R.1975), and this case because there we found that jurisdiction had not been preserved under paragraph 11*d,* Manual for Courts-Martial, United States, 1969 (Revised edition).

Our decision in *United States v. Simpson,* 51 C.M.R. 218, 1 M.J. 608 (1975), is arguably but not actually inconsistent with our holding here. There we held the Government estopped, because of its failure to comply with its regulation, from exercising jurisdiction over a soldier who was held beyond his ETS over his objection and tried for an AWOL occurring after ETS when the Government unlawfully refused to release him. Those facts compel a different result.

C.M.R. 249 (1967), and that he voluntarily waived his rights.

The findings of guilty and the sentence are affirmed.

Senior Judge CARNE, and Judges DONAHUE, FELDER, FULTON, MITCHELL and MOUNTS concur.

Chief Judge CLAUSEN and Judge CLAUSE, not participating.

COSTELLO, Judge, concurring in result:

This case was properly tried under the traditional rules that military status raises amenability to military criminal law and that military status, once acquired, persists until terminated according to law. I write separately and overlong to emphasize the importance of the traditional rules and to contest certain threatened erosions of the proper scope of those rules.[1]

I reject appellant's contention and the minority view that the Government was guilty of a misdeed equivalent to an individual soldier's violation of Article 92(1), Uniform Code of Military Justice, such that it is estopped to assert criminal jurisdiction over this appellant. The majority opinion is in agreement with that view to the extent that it says that there was a misdeed possible (though none occurred) because the Government had imposed some voluntary limitations on its exercise of jurisdiction, paragraph 2–4, AR 635–200. That I also disagree with; no restrictions were intended or effected by that regulatory language. Both opinions speak of a soldier reaching the end of his enlistment, his "ETS" as it is called, and then being "retained" on active duty so that the compulsory continuation of military service results, a fortiori, in a continuation of jurisdiction.

This appellant, having made no demand for release from the Army, does not fall within the regulatory provisions relating to "retention"; he was in a "continued" status. That status and some of its conse-

quences, including jurisdiction, are unusual, but they flow from fully supportive legal and military considerations.

Much of the difficulty with the notion of consequent criminal jurisdiction at this point in a person's military career appears to flow from a perception that a soldier's continuation on active duty beyond the end of his stated term of service, the ETS referred to above, is, somehow, illegal *per se*. *See United States v. Hout*, 19 U.S.C.M.A. 299, 41 C.M.R. 299 (1970) (Dissenting opinion of Ferguson, J., at 303–305). That just is not so, periods of service may vary lawfully.

First, there is a practical reason for regarding such periods as flexible. In an Army which may total millions of persons and be spread about the world, maladjustments in times of entry and departure and of personal availability for those actions may be expected with certainty. Congress recognized it—making everybody's term of service variable by inserting the phrase "persons awaiting discharge" in Article 2(1), UCMJ, and providing that a soldier's military service ends only when formally marked, consented to and signalled by a "certificate of discharge." 10 U.S.C. § 1168.

Secondly, the principle of continuing military obligation is entirely consistent with the status theory of military service. In that view, entry into the armed services creates a new relationship between the citizen and the state, something like getting married or being appointed as a judge on good behavior. The status thus created cannot end *ex proprio vigore* nor can it ". . . be severed by breach of contract *unfortified by a proper authoritative action* [citing cases]." *Dickenson v. Davis*, 245 F.2d 317, 319 (10th Cir. 1957), cert. den. 355 U.S. 918, 78 S.Ct. 349, 2 L.Ed.2d 278 (1958) (Emphasis supplied). *Accord United States v. Hout, supra; Taylor v. Resor*, 19 U.S.C.M.A. 405, 42 C.M.R. 7 (1970); *United States*

---

**1.** It is fair to speak of "traditional" rules. *See* former Article of War 2a and paragraph 10, both in the Manual for Courts-Martial, 1928

(1943 Rev.); paragraph 334, Naval Courts and Boards (1937); British Army Act of 1955 §§ 11, 13, 131 and 132.

*v. Blanton*, 7 U.S.C.M.A. 664, 23 C.M.R. 128 (1957).[2]

Thus the proper general proposition is that stated periods of military service are extended by operation of law in the absence of an effective discharge or other appropriate separation document. The duration of such involuntary extensions may be for months. *Dickenson, supra; Hout, supra.* Whatever the inertial period, it is also clear that military criminal jurisdiction is an incident of the continued military status.

This statement follows from the general statutory rule. Criminal jurisdiction over persons in the armed forces is a consequence of their military status as defined by the *Uniform Code*, Article 2, *e. g.*, a person belonging to a regular component. *Dickenson, supra*, at 319. People whose status does not change lose none of the consequences of the status, *i. e.*, they continue in rank, position, pay, and other emoluments. However, when the status is destroyed as provided by law, such as by a discharge, courts quickly announce the end of the consequences, especially jurisdiction. *Toth v. Quarles*, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955). The watershed between the exceptional powers of courts-martial on one hand and the protections of both the complete Bill of Rights and Article III of the Constitution on the other is the discharge of the citizen from the service. *Id.*, at 22–23, 76 S.Ct. 1.[3] Before that, the bare military status is determinative. The automatic statement that criminal jurisdiction is a consequence of status appears shallow; however, there are more than abundant military requirements for the basic rule and the "persons awaiting discharge" part of Article 2(1). The reasons and requirements may be briefly listed:

1. To maintain integrity of the military force as by inhibiting soldiers from walk-

ing off an active battlefield on the day their enlistments nominally expire.

2. To provide order and regularity during the delay incident to the muster-out of troops after the need for massive mobilization has passed.

3. To prevent fortuitous cleansing of the slate by the routine discharge of those who deserve both to be called to account and to be barred from reenlistment.

4. To foster disciplined conduct by individuals in the final few days or hours of service.

5. To provide a legal status and basis for payment and management of such persons.

Thus there is a sound military basis for the consequent jurisdiction such as was exercised here and which has been consistently recognized by both military and civilian courts.[4]

What, then, is the impediment to the exercise of jurisdiction in this case? Appellant suggests that the Government is estopped from asserting its jurisdiction for failure to comply with certain Army personnel regulations concerned with separations from the service. I will deal with the precise status of those regulations shortly, but there is a substantive reason why they are inapposite, as was suggested earlier. First, appellant relies on two cases from our jurisprudence for the proposition that: "Once the question of invalid personal jurisdiction has been raised, the Government bears the burden of proof that it had commenced action with a view to trial, sufficient to extend jurisdiction, *before* the enlistment expiration date." *Citing United States v. Kalt*, 50 C.M.R. 95 (A.C.M. R.1975), and *United States v. Simpson*, 51 C.M.R. 218, 1 M.J. 608 (A.C.M.R.1975) (App. Brief pp. 2–3).

---

**2.** Short periods of active duty for training contracted for by Reservists are not necessarily exceptions to this as they provide for automatic termination.

**3.** I am personally persuaded that the soldier fares better at all stages of the proceedings, but civilian courts do not always see it that way.

**4.** These cases of recognition in various circumstances are amply collected in the Government's brief.

The suggestion is that any assertion of no jurisdiction puts the Government to a very specific form and content of proof. A first look at *Kalt* would seem to support appellant's suggestion. Here is its exact language:

> " 'Once the question of jurisdiction over the accused after the expiration of his enlistment is placed in issue, the *government has the burden to show that prior to the expiration thereof it had commenced action with a view to trial sufficient to preserve jurisdiction.*' *United States v. Larson*, 42 C.M.R. 941 (N.C.M.R.1970). (*See also United States v. Hout*, 19 U.S.C. M.A. 299, 41 C.M.R. 299 (1970), and paragraph 11d, M.C.M.1969 (Rev. ed.)." (Emphasis supplied.) 50 C.M.R. at 97.

This states only a special rule and the Navy case quoted must be read in context. There the appellant made a demand for discharge after his ETS and before anything had been done to attach specific jurisdiction to him. Therefore, he was entitled to immediate discharge and to an end of the consequent jurisdiction flowing from his status under Article 2(1). The Navy Court properly took its law from *Hout* wherein the absence of a demand for release was conclusive of the question, Did status and consequent general jurisdiction continue? *Hout* was simply a person "awaiting discharge" within the meaning of Article 2(1), UCMJ, (albeit for eight months); *Larson*, however, made a timely demand, and it was that demand which put the question of jurisdiction in issue such that the Government was obliged to show a prior act ". . . with a view to trial sufficient to preserve jurisdiction." Our later decision in *United States v. Simpson*, 51 C.M.R. 218, 1 M.J. 608 (A.C.M.R.1975), is consistent with this view; there, the effect of the appellant's protests was described as "the determinative issue" and, having found them timely with respect to the Government's inaction, this Court dismissed the charges for want of jurisdiction. 1 M.J. at 611–612.

The foregoing analysis shows that the *Larson* rule is not to be applied here as contended. Moreover, and to the extent that prior cases from this level do suggest the applicability of the *Accardi* "failure to follow one's own regulations" rule, I would also reject them. The reason for that rejection is that paragraph 2–4, AR 635–200, is just not the type of regulation contemplated by the *Accardi* and *Russo* line of cases. Rather than protecting or enlarging personal liberties, the provisions relevant here were expansive of the power of Government, designed to regulate only the conduct of officials below the policy-making level and had as their purpose a simple effort to stabilize record keeping.

Ten years ago, all of paragraph 2–4 was the present subsection *b* which provided simply that persons awaiting trial or the results of trial on their ETS would not be discharged until final disposition of the charges was made. AR 635–200, 15 July 1966. The first appearance of the present subparagraph *a* was on 22 December 1967. That addition delegated to general court-martial convening authorities part of the retention power exercised only by Headquarters, Department of Army, prior to the Vietnam buildup.

Most of the modern content of subparagraph *a* first appeared in 1971. At that time two things happened: the authority to retain was further enlarged to include designees of the general court-martial convening authority and the occasions for retention were enlarged to include those members who had been "apprehended, arrested, confined or otherwise restricted . . ." AR 635–200, 6 August 1971. That extension was modified the same year to require *personal* approval by the general court-martial authority to retain persons *not charged* but still continued more than 30 days beyond ETS. AR 635–200, 3 November 1971.[5] That was the total version applicable to

---

**5.** The identity of this 30 day period with the period after which GCM authorities must per-

sonally review the pretrial confinement of accused persons cannot be overlooked.

appellant, but its 30 day rule is not relevant to this discussion.

This tracing discloses nothing to suggest that the regulation was intended to modify any rule of law or provide additional legal protections to anyone. It is a personnel-administration device which locates certain decision making levels and amplifies rather than restricts the power to be exercised over members.

That view of AR 635–200 is supported by the view of its promulgators. Paragraph 1–2, Scope, of that regulation says:

"a. . . . Unless specifically provided for, the provisions of this regulation, as well as all regulations in the 635 series dealing with the discharge of enlisted personnel, are binding upon field commanders *but not* upon Headquarters, Department of Army." [Emphasis supplied.] AR 635–200.

Patently, the power to bind and loose which was exercised only in Washington prior to 1966 remains there. Field commanders may act only within the scope of their delegations; they must come up through channels to obtain further authority to retain persons. Furthermore, the plenary power retained by Headquarters, Department of Army, meant that no improper local action need go unredressed. Simple administrative action—an appeal "through channels" —was clearly available to this soldier who had counsel well before trial. No such remedy was pursued.

Thus, the regulation was not violated, even if applicable; the putative violation raised no estoppel because appellant was not deprived of anything; and even if he had been injured his complaint is untimely in view of the posture of paragraph 1–2 of the regulation here involved. Therefore, none of the Government's conduct under

the regulation was a bar to the exercise of jurisdiction. Appellant was properly tried; the findings and sentence should be affirmed.

COOK, Senior Judge, dissenting:

I dissent.

Appellant was convicted, contrary to his pleas, of one specification of unlawful entry and of one specification of attempted larceny.[1] These crimes are violative of Articles 108 and 80, Uniform Code of Military Justice (10 U.S.C. §§ 908 and 880) respectively.

The principal thrust by appellant in his appeal is that the Government, because of its failure to comply with its own regulation, is estopped from asserting jurisdiction over him. I agree.

Appellant was confined on the same day as the commission of the acts for which he was convicted, i. e., 18 November 1975, and he continued in that status until trial. Charges were preferred on 28 November 1975. The appellant's ETS was 27 December 1975.[2] The Article 32 investigation was completed on 29 December 1975. The case was referred to a general court-martial on 7 January 1976 and trial commenced on the 16th of that same month.

Article 2, UCMJ, reads in applicable part: "The following persons are subject to this chapter:

(1) Members of a regular component of the armed forces including those awaiting discharge after expiration of their terms of enlistment; . . . ."

While a regular soldier is, by the terms of this article, subject to the Uniform Code while awaiting accomplishment of his discharge, we must look elsewhere for the authority to retain him beyond the expira-

---

1. As appellant was acquitted of stealing the property alleged in the original specification, and found guilty of other property not originally charged, under the *ratio decidendi* of *United States v. Nedeau*, 7 U.S.C.M.A. 718, 23 C.M.R. 182 (1957), and *United States v. Guy*, 8 U.S.C.M.A. 66, 23 C.M.R. 290 (1957), I believe that the findings, as they relate to the Article 80, UCMJ, offense, should be set aside. A reas-

sessment of the sentence would then be in order. I would accomplish this were I not for disposing of the entire case in a more comprehensive manner.

2. Although there is some confusion as to the accuracy of this date, the acceptance of any of the other suggested dates would not alter my conclusion.

tion of his term of service (ETS).[3] In this case the Government relies upon paragraph 11*d*, Manual for Courts-Martial, United States, 1969 (Revised edition), for such power. That provision reads as follows:

"*d. Effect of termination of term of service.* Jurisdiction having attached by commencement of action with a view to trial—as by apprehension, arrest, confinement, or filing of charges—continues for all purposes of trial, sentence, and punishment. If action is initiated with a view to trial[4] because of an offense committed by an individual before his official discharge—even though the term of enlistment may have expired—he *may* be retained in the service for trial to be held after his period of service would otherwise have expired. Similarly, if jurisdiction has attached by the commencement of action before the effective terminal date of self-executing orders, a person may be held for trial by court-martial beyond that terminal date. See also Article 2(1)." (Emphasis supplied and footnote added).[5]

Were the problem involved in this case for resolution solely controlled by this paragraph, I think there would be near unanimity of opinion that the Government acted lawfully.

The crux of the problem in this case, however, is to be found in Army Regulation 635–200 which regulates the separation of

enlisted personnel. Paragraph 2–2*d*, of that regulation reads:

"Subject to the provisions of section V of this chapter, an individual enlisted, inducted, or ordered to active duty normally[6] will be discharged or released from active duty on the date upon which he completes the period for which enlisted, inducted or ordered to active duty." (Footnote added).

Section V, referred to in the last quoted paragraph, contains paragraph 2–15 which is applicable to our problem. It reads:

"*When retained in service awaiting trial or results of trial.* When an individual is retained in service as prescribed in paragraph 2–4, the effective date of his discharge or release from active duty depends upon the result of his trial or the disposition made of his case."

Looking at paragraph 2–4, as we are instructed to do by paragraph 2–15, in order to learn how to avoid the mandate of paragraph 2–2*d* that an individual be discharged on the anniversary of his ETS, we find paragraph 2–4*a*, which reads:

"A member may be retained beyond the expiration of his term of service by a general court-martial convening authority, or his designee, when an investigation of his conduct has been initiated with a view to trial by court-martial; charges have been preferred; or the member has

---

**3.** "Military jurisdiction has two aspects. First, the accused must be subject to military law at the time of the commission of the offense *and at the time of trial.* Secondly, the offense must be committed at a time when the accused is amenable to the Uniform Code." *United States v. Schuering,* 16 U.S.C.M.A. 324, 327, 36 C.M.R. 480, 483 (1966). (Emphasis supplied).

**4.** Some cases interpreting what is an action with a view to trial are *United States v. Hout,* 19 U.S.C.M.A. 299, 41 C.M.R. 299 (1970); *United States v. Schuering, supra; United States v. Rubenstein,* 7 U.S.C.M.A. 523, 22 C.M.R. 313 (1957); *United States v. Sippel,* 4 U.S.C.M.A. 50, 15 C.M.R. 50 (1954); *United States v. Calley,* 46 C.M.R. 1131 (A.C.M.R.1973); *United States v. Entrekin,* 42 C.M.R. 530 (A.C.M.R. 1970); *United States v. Maurer,* 23 C.M.R. 503 (1957); *United States v. Mansberger,* 20 C.M.R. 449 (A.B.R.1955).

**5.** Whether this paragraph is a proper exercise of the President's powers under Article 36, UCMJ (*see United States v. Heard,* 3 M.J. 14, n. 12 (1977); *United States v. Ware,* 24 U.S. C.M.A. 102, 51 C.M.R. 275, 1 M.J. 282, n. 10 (1976), does not detain me as I am of the opinion that the regulation in question, to be discussed anon, is within the Secretary of the Army's statutory power to promulgate. *See* footnote 7, *infra.*

**6.** While I am aware of the presence of the qualifier "normally" I view it as an example of normal legalistic precaution, and not as an additional condition in the regulation permitting non-compliance with the other specific provisions of the regulation. Consequently, I construe this paragraph to say that a soldier will be separated on his ETS date unless his retention is permitted by Section V.

been apprehended, arrested, confined, or otherwise restricted by appropriate authority. However, if charges have not been preferred, the member shall not be retained more than 30 days beyond the expiration of his term of service without the personal approval of the general court-martial convening authority concerned."

It is obvious from the similarity of language that this regulatory provision was intended to implement the Manual provision found at paragraph 11d, supra. Where the Manual language is general and indefinite, the regulatory terminology is specific. The regulation not only clearly describes and limits the circumstances under which a member may be retained beyond his ETS for the purpose of trial,[7] but it is also explicit as to who can authorize such a retention.[8] I will concur, however, with those who observe that this provision is not as precise as it could have been in denominating when the general court-martial convening authority or his designee must make the decision to retain an individual. It appears to me that a fair and unstrained interpretation of the plain language of the regulation leads to the single conclusion that that decision must occur prior to the individual's ETS. Any interpretation that would permit the general court-martial authority or his designee to make a post-re-

tention decision (a ratification) to retain an individual flies in the face of the wording of the regulation. Such an interpretation of necessity would permit the retention of an individual, for whatever period, beyond his ETS on someone elses authority, i. e., someone other than the two individuals selected by the Secretary of the Army. I cannot subscribe to such an explication that would sanction so flagrant a contravention of the regulation.

Opponents of my literal interpretation counter by conjuring up the hypothetical situation in which a soldier, moments before his ETS, commits an offense in violation of the UCMJ and the general court-martial convening authority or his designee is not readily available to authorize the culprit's retention beyond his ETS for trial. Thus, presumably the individual goes unpunished for his delict. My response to that is, if the hypothetical depicts a realistic problem of some proportion, the Government can simply remove the regulatory fetter and return the law to the state where a soldier's retention beyond his ETS was permissible without the prior approval of the general court-martial authority or his designee.[9] This solution I believe is preferable to distending the plain words of the regulation to mean that approval to retain a member beyond his ETS may be obtained after the retention has already occurred.[10]

---

7. To those who say that the Secretary of the Army is without authority to issue such a regulation, I suggest they consult 10 U.S.C. § 3012(g) and 5 U.S.C. § 301. Because I find the regulation to be complementary of and not in conflict with the statute, I find it is legal. *United States v. Seay*, 24 U.S.C.M.A. 7, 51 C.M.R. 57, 1 M.J. 201 (1975). Query: If regulations which have the effect of constructing statutorily bestowed jurisdiction are of no force and effect, what was the point in the *United States v. Dunks*, 24 U.S.C.M.A. 71, 51 C.M.R. 200, 1 M.J. 254 (1975), decision? *Also see Taylor v. Resor*, 19 U.S.C.M.A. 405, 42 C.M.R. 7 (1970); *United States v. Walker*, 47 C.M.R. 288 (A.C.M.R.1973).

8. If it were not intended that the cited individuals actually undertake such authorizations, it would have been simple enough for the sentence to have been written without enumerating them. *See* the change to the regulation referred to in the next footnote.

9. I note that the Secretary of the Army has recently done precisely this. The first sentence of paragraph 2–4a, AR 635–200, has been rewritten to read similar to paragraph 11d, MCM, 1969 (Rev.). *See, Criminal Law Section*, The Army Lawyer (Feb. 1977).

10. In all events the depicted hypothetical bears no resemblance to what occurred in this case. Forty days elapsed from the date appellant was placed in pretrial confinement until his ETS. This was ample time to obtain the requisite approval for retention, but no one did. Almost two weeks passed, after appellant's ETS before the general court-martial convening authority referred this case to trial. Appellant was in pretrial confinement during this entire period. Assuming, arguendo, that a post-ETS act by the GCM authority or his designee complies with the terms of the regulation if done within a reasonable time, I don't consider the act by the GCM authority in this case to have been within such a reasonable time. In this connec-

Having decided that the Government had a regulatory requirement to take certain steps in order to retain appellant beyond his ETS for trial[11] and further having found that the Government failed to comply with that requirement,[12] what is the appropriate remedy?

To say that no remedy is required because there has been no prejudice to this appellant is unacceptable. That is especially so when the determination of no prejudice is premised upon a speculative guess that the convening authority would have referred this case to trial even if he had been requested to do so prior to appellant's ETS and had known that the appellant was about to reach his ETS. I do not believe I have that power of divination.[13] Convening authorities are not poured from the same mold. Each one can be depended upon to be unpredictable on occasion. I simply do not believe we can or should predicate a decision of this magnitude on so tenuous an assumption.[14]

To permit the Government to go to trial in this case in spite of the fact that it ignored its own regulation is to bring the rule that the Government must abide by its own regulations[15] to nought. Such a result would permit the Government to do with impunity that which it forbids its own soldiers to do under Article 92(1), UCMJ, i. e., disobey a regulation. Such a result is, under our legal system concept, intolerable. In my view the Government is estopped, by its failure to comply with this salient regulatory provision, ". . . to contend that the appellant remained subject to court-martial jurisdiction."[16]

---

tion, we note that on page 26–27, record of trial, during the defense counsel's motion on this issue, the following colloquy:

"IC: Let the record reflect that the defense counsel is offering to the judge, Appellate Exhibit IV Your Honor, that is a xerox copy of the paragraph of the Army Regulation in question. Your Honor, that regulation points out that a member may be retained beyond the expiration of term of service, by a general court-martial convening authority or his designee when certain conditions exist. We've discussed the matter with trial counsel. We believe the trial counsel's willing to stipulate that the accused's ETS date has passed; It was subsequent to his ETS date before charges were referred for trial; Charges had been preferred before the ETS date; and that no action was taken by either the general court-martial convening authority or his designee regarding the accused's retention beyond his ETS date.

TC: Government so stipulates, your Honor."

Additionally, I cannot concur with the conclusion that, because the first page of the charge sheet attached to the advice contained the date of the appellant's enlistment and the length of that enlistment, the convening authority must have known the date of appellant's ETS. Computation of an ETS by merely adding the period of enlistment to the entry date is notoriously risky, principally because of the operation of 10 U.S.C. § 972. The case *sub judice* is one in point. *See* footnote 2, Senior Judge Jones' opinion. Thus, I find it highly dubious that the convening authority was even vaguely aware of appellant's ETS when he referred the case to trial—assuming such knowledge at that point in time is relevant to the resolution of the instant case.

11. I am aware that the decisions in *United States v. Hout*, 19 U.S.C.M.A. 299, 41 C.M.R. 299 (1970), and in *United States v. Downs*, 3 U.S.C.M.A. 90, 11 C.M.R. 90 (1953), appear to create a waiver theory in cases in which personnel are held beyond their ETS without compliance with paragraph 11*d*, MCM, 1969 (Rev.), when such personnel fail to object to their retention. However, I refuse to convert a failure of an incarcerated serviceman to demand his separation into a consensual or voluntary acquiescence in his retention, and therefore find that theory inapplicable in this case.

12. That the Government must comply with its own regulations is beyond cavil at this point. *Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *United States v. Dunks, supra; United States v. Burden*, 23 U.S.C.M.A. 510, 50 C.M.R. 649, 1 M.J. 89 (1975); *United States v. Russo*, 23 U.S.C.M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975).

13. *United States v. Greenwalt*, 6 U.S.C.M.A. 569, 20 C.M.R. 285 (1955).

14. In any event such doubts are to be resolved in favor of the appellant, *United States v. Boatner*, 20 U.S.C.M.A. 376, 43 C.M.R. 216 (1971).

15. *See* footnote 12, *supra*.

16. *United States v. Simpson*, 51 C.M.R. 218, 221, 1 M.J. 608, 612 (A.C.M.R.1975).

I would set aside the findings and the sentence and dismiss the charges.

Judges DRIBBEN and DeFORD concur.