UNITED STATES, Appellee

v

HAIL K. LOVELL, Airman Third Class,
U. S. Air Force, Appellant

7 USCMA 445, 22 CMR 235

No. 8479

Decided December 21, 1956

 ██

*Major George M. Wilson* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Stanley S. Butt.*

*Major Fred C. Vowell* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Francis P. Murray.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A board of review affirmed the accused's conviction on two specifications of unauthorized absence, in violation of Article 86, Uniform Code of Military Justice, 50 USC § 680, and his sentence to a dishonorable discharge (suspended), total forfeitures, and confinement at hard labor for one year. We granted review to consider the legal sufficiency of the evidence to support the findings of guilty on specification 2.

The specification in issue alleges that the accused absented himself without authorization from his organization for the period from October 28, 1955, to December 20, 1955. The initiation of the absence was established by an extract copy of the morning report of the accused's organization. However, on defense counsel's objection, a second exhibit showing the accused's return to military control was excluded from evidence. No other evidence of the termination of the accused's absence was presented.

In United States v Emerson, 1 USCMA 43, 1 CMR 43, we held that the offense in question is complete as soon as the accused absents himself without proper authority. We further held that the time of return goes

only to the "gravity of the offense." Ibid, page 46. These rulings are also expressed in the punishments prescribed for the offense. An unauthorized absence for a period of not more than three days subjects the accused to a maximum punishment of confinement at hard labor not to exceed one month and a limited forfeiture of pay; an absence in excess of three days, but not more than thirty days, is punishable by confinement at hard labor for six months and forfeiture of two-thirds pay for a like period; and, finally, an absence of more than thirty days authorizes a dishonorable discharge, confinement at hard labor for one year, and forfeiture of all pay and allowances. Manual for Courts-Martial, United States, 1951, paragraph 127c, Section A, as amended by Executive Order No. 10565, September 28, 1954. Thus, the length of the absence increases the permissible punishment. In other words, the duration of an unauthorized absence is an aggravating circumstance.

If the punishment for an offense depends upon aggravating matter, such matter must be both alleged and established beyond a reasonable doubt by the evidence. United States v Beninate,

4 USCMA 98, 15 CMR 98; United States v May, 3 USCMA 703, 14 CMR 121. Here, the question is whether the court-martial's finding of the aggravating circumstance, namely, the duration of the unauthorized absence, is legally correct.

To support the finding the Government relies upon the presumption of continuance.[1] The 1951 Manual expresses the presumption in two forms. First, it notes the general rule that a "condition shown to have existed at one time may be presumed to have continued." Paragraph 138a. Secondly, in its discussion on desertion it provides that:

". . . Having once been shown to exist, the condition of absence without proper authority with respect to an enlistment or appointment may be presumed to have continued, in the absence of proof to the contrary, until the return of the accused to military control under that enlistment or appointment." [Paragraph 164a, page 313.]

In considering the meaning of the quoted provision service boards of review have reached opposite conclusions. One group has held that the prosecution must present affirmative evidence of the date of return to military control in order to bring the presumption into operation. See United States v Leone, 30 BR (ETO) 257. Another group maintains that, once an unauthorized absence is shown, it is presumed to continue until the accused himself establishes his return to military control. United States v Buzbee [ACM 2897], 3 CMR (AF) 457; United States v Thomas [ACM 5027], 6 CMR 646. As the board of review in the Buzbee case expressed it, the accused must show "by some evidence . . . that the Air Force has exercised some measure of actual or constructive control over him." In this line of cases the accused's presence at the trial is regarded as evidence of the date of his return to military control.

The difficulty with the Buzbee position is that it disregards the surrounding circumstances. If it is assumed that the accused returned to military control on the same day of his trial, it must also be assumed that the charges were served upon him; that they were fully and impartially investigated under the provisions of Article 32, Uniform Code of Military Justice, 50 USC § 603; that they were submitted to and considered by the Staff Judge Advocate in accordance with the requirements of Article 34, 50 USC § 605; that they were considered by the convening authority and referred by him for trial; and, finally, that defense counsel conferred with the accused in the preparation of the defense. All this must be presumed to have taken place between the hour the accused returned to military control and the hour the court-martial convened on the same day. Such speed would strongly imply that the accused was deprived of the important pretrial proceedings provided for by Congress. See United States v Parker, 6 USCMA 75, 85, 19 CMR 201. Consequently, common sense and legal experience require the conclusion that the accused's mere presence at the trial does not support a finding that he returned to military control only as of that date. On the contrary, it strongly implies an earlier return.

Put differently, the presumption of continuance does not merely flow forward, as the Government contends, but it also flows backward. See, Reading Co. v Geary, 47 F2d 142 (CA4th Cir) (1931); Wigmore, Evidence, 3d ed, §§ 382, 435. At some point the backward

---

[1] The manual uses the word "presumption" in two disparate senses. In one sense presumption means merely a "justifiable inference"; in another it imposes a duty on the court members to presume certain facts from other facts in evidence. Manual for Courts-Martial, United States, 1951, paragraph 138a. This loose approach has been the subject of critical comment. R. L. Tedrow, Comments on "Self-Incrimination Refined," The Judge Advocate Journal, Bulletin No. 20, July 1955, page 41. In some situations the difference may be material. Here, however, it is unnecessary to determine the precise nature of the presumption in issue.

flow of the presumption meets the forward flow. Any attempt to fix that point is sheer speculation. Consequently, the presumption of continuance cannot supply the necessary proof of aggravation. There must be other positive evidence of the accused's return to military control.

What then is the meaning of the Manual's provision? As we construe it, it simply means that on proof of two facts: (1) an unauthorized absence, and (2) a later return to military control, the court-martial can infer that the entire period of absence was unauthorized. Proof of only one of these two operative facts does not provide the required basis for the presumption.

Our construction accords with the statement of the presumption in the 1921 Manual, which provides the basis for the current provision. It was there said:

"The condition of absence without leave having once been shown to exist will be presumed to continue in the absence of evidence to the contrary until the accused came again under military control. *It is therefore necessary to prove only that the accused went absent without leave a certain date and came under military control a certain date. During the intermediate time* it is presumed he was absent without leave." [Italics supplied.] [Manual for Courts-Martial, U. S. Army, 1921, paragraph 284.]

Our construction is also in harmony with the long-established administrative interpretation of the essential elements of unauthorized absence offenses. Thus, in the case of desertion, it has been said that the prosecution must prove that the desertion "was of a duration . . . as alleged." Manual for Courts-Martial, United States, 1951, paragraph 164a; Manual for Courts-Martial, U. S. Army, 1949, paragraph 146; Manual for Courts-Martial, U. S. Army, 1928, paragraph 130. In regard to a simple unauthorized absence case, the Manuals point out that the prosecution must prove that the accused absented himself "for a certain period." 1951 Manual,

paragraph 165; 1949 Manual, paragraph 149; 1928 Manual, paragraph 132. Significantly, the emphasis in both instances is on definiteness of duration. We hold, therefore, that the evidence here is legally insufficient to support a finding that the accused's unauthorized absence was for the period alleged. It is however, sufficient to support the accused's conviction for an unauthorized absence of one day. Accordingly, we find correct in law only so much of the findings of guilty of specification 2 as finds that the accused absented himself without authority from his organization on October 28, 1955.

The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the United States Air Force for submission to the board of review for determination of an appropriate sentence on the basis of the findings of guilty of specification 1 and the modified findings of guilty of specification 2.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

As the first order of business, I call attention to the fact that the author Judge challenges the holding in United States v Buzbee, 3 CMR(AF) 457. To support his position he assumes that the day of trial is the day of return and then argues that if such is the case, many rights guaranteed to an accused by the Uniform Code of Military Justice have been impaired. That part of the opinion falls on its own weight as the assumption is but a broken reed in the light of military records on appeal. Surely there is no reason to assume that charges were served on this accused on the same day as he was tried. Just a hurried peek in the record explodes that premise, for it shows charges were served on accused on the 6th day of January 1956, and the trial was not held until some thirty days thereafter. That was not the earliest date upon which the accused was present, for the record affirmatively shows that the pretrial hearing was held on January 5,

**449**

1956, and the accused must have been in the hands of the military at that time, because he gave the investigating officer a fairly lengthy exculpatory statement. Lastly, all of the other assumptions mentioned by my associates are disproven by the evidence found within the confines of the record, and, for the information of those who might be interested in knowing what the evidence is and not what it must be assumed to be to prove a point, I relate chronologically the dates which are fixed by the record. Charges were preferred against the accused on the 3d day of January 1956, and he was notified of the charges on the same date. The pretrial investigation was held on January 5, 1956, the advice of the staff judge advocate to the convening authority bears the same date mark, and the accused was served with a written copy of the charge sheet on the 6th day of January 1956. On the 11th day of January 1956, the accused requested a continuance of his trial until February 6, 1956, and apparently the request was granted, for the case was not referred to a general court-martial for trial until February 1. The trial was held on the date selected by the accused.

In the light of that positive evidence, which we are duty bound to consider, I wonder why it was necessary for the Court to propose suppositions contrary to the recorded facts. My answer would have to be that my associates have missed entirely the legal principles announced in Buzbee and allied cases, and, in their endeavor to interpret the wording of the Manual in a light favorable to an accused, have made the mistake of devising an unwarranted hypothetical which is meritorious only in the sense that it supports their views.

In cases involving absence from duty, Congress gave to the court-martial the right to impose any punishment it deemed appropriate. At the same time, the law delegated to the President the right to set the maximum limits which could be imposed. In connection with that type of offense, the maximum penalties imposable have been graduated in severity according to the length of absence. The question in this case, then, is simply this: For sentence pur-

poses, is the evidence sufficient to establish that the accused was absent without authority for the period alleged? My answer is in the affirmative, and the rationale by which I reach that conclusion will be developed in the following discussion.

Paragraph 138a of the Manual for Courts-Martial, United States, 1951, provides that a condition shown to have existed at one time may be presumed to have continued. Certain illustrations of the presumption, more properly labeled a justifiable inference, are enumerated, and then later in paragraph 164a, the Manual goes on to deal with the offense of absence without leave. There it spells out specifically how the presumption may be used once a status is shown to exist. The provision is as follows:

". . . Having once been shown to exist, the condition of absence without proper authority with respect to an enlistment or appointment may be presumed to have continued, in the absence of proof to the contrary, until the return of the accused to military control under that enlistment or appointment."

I believe that the above-stated presumption is rooted in the commonly accepted experiences of mankind and that the President was well within his authority when he permitted its use in military courts. I, therefore, propose to apply it according to its terms for, if I do less, I would necessarily deny its existence.

The morning report shows the absence without authority began on October 28, 1955. That status could be presumed · to have continued until the return of the accused to military control. In other words, the court-martial members could have found as a fact that accused went absent without leave on the first mentioned date and remained in absentia until he was returned to military control. While this finding would fix the beginning of the absence with certainty and continue it for some indefinite time, there yet remains the necessity of fixing a terminal date. For that purpose, the day of trial would be the outside limit, for the ac-

cused was present in court. However, the condition of absence could have been terminated at an earlier date, and all that is needed to show a change in status is some evidence of an earlier return. Proof of that matter may be furnished by the Government, by the accused, or by both. In this record I find several bits of evidence which unquestionably show the status of unauthorized absence to have changed prior to trial. One could not seriously contend that the accused was absent without authority when he participated in his pretrial hearing. Neither could anyone reasonably conceive of him not being within military control when he was served with the charges or when he requested a continuance. Those incidents give clear and positive assurance that the accused had been returned to a military organization prior to his trial and would be evidence which would rebut the presumption that he was absent until the day he was tried.

One other factor which influences the period of absence must be mentioned. Pretermitting motions to ▮▮▮▮▮▮ amend, the Government is bound by its pleadings, and if in the specification the terminal date is fixed with certainty, that is the last date upon which it may rely for termination of the absence without leave status. In this instance, the alleged date is December 20, 1955, and that is prior to any proven date of return to be found in the record. Accordingly, I would say the presumption of continued unauthorized absence would run from the day of departure until the terminal date alleged in the pleadings.

I am aware of the argument that a statutory presumption such as this compels an accused to prove ▮▮▮▮▮▮ the Government's case. I am certain that I have never subscribed to any theory that the accused must join with the Government in sealing his doom, but I have on a number of occasions contended that if he wants to avoid the possibility of the court-martial members drawing justifiable inferences in favor of the Government, he must produce evidence which in some way undercuts the factual base supporting the inferences. Further-

more, if a presumption naturally arises from a fact or set of facts, the accused must run the risk of having the court draw the inference, or he must come forward with some evidence pointing to another direction. That is a well-established rule which is easily documented.

In Yee Hem v United States, 268 US 178, 45 S Ct 470, 69 L ed 904 (1925), the Supreme Court had under consideration a statute which provided that opium found within the United States was presumed to have been imported after a given date, and that the defendant was to bear the burden of proof to rebut the presumption. The court disposed of the appellant's argument attacking the statute by stating:

"The point that the practical effect of the statute creating the presumption is to compel the accused person to be a witness against himself may be put aside with slight discussion. The statute compels nothing. It does no more than to make possession of the prohibited article prima facie evidence of guilt. It leaves the accused entirely free to testify or not, as he chooses. If the accused happens to be the only repository of the facts necessary to negative the presumption arising from his possession, that is a misfortune which the statute under review does not create but which is inherent in the case. The same situation might present itself if there were no statutory presumption, and a prima facie case of concealment with knowledge of unlawful importation were made by the evidence. The necessity of an explanation by the accused would be quite as compelling in that case as in this; but the constraint upon him to give testimony would arise there, as it arises here, simply from the force of circumstances, and not from any form of compulsion forbidden by the Constitution."

We have applied the very same rule in appropriate situations; for example, in United States v Gohagen, 2 USCMA 175, 7 CMR 51, Judge Brosman, while speaking for a unanimous Court, said:

"The remaining question has to do with whether it was incumbent on the

prosecution to *establish by proof* that accused was not to be found within the exceptions stated in the circular. Again we are compelled to respond in the negative. The following language of Mr. Justice Cardozo in Morrison v. California, 291 US 82, 88–91, 78 L ed 664, 669–670, 54 S Ct 281, is particularly appropriate:

'. . . The decisions are manifold that within limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and cast on a defendant. The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression. . . .' "

When the teaching of these decisions is applied here, it follows that once the Government proves the inception of the unauthorized absence, a base has been furnished to permit the court-martial members to find that that condition continued until such time as evidence is produced to undermine it. Some evidence to interrupt the absence will always be in the record as accused's presence at trial proves conclusively he is not then absent. However, a return earlier than the date of trial will undoubtedly be established by official records or by testimony. But if the accused desires to persuade the court not to infer that he was in an absence status until the military service has dealt with him in some manner which is reflected in the record, he must come forth with some evidence tending to show an earlier return.

I would affirm the decision of the board of review.