**UNITED STATES**

v.

**Richard Fredrick MORSFIELD, 272 56 5631, Seaman Recruit (E-1), U. S. Navy.**

**NCM 76 2485.**

U. S. Navy Court of Military Review.

16 May 1977.

CDR Carl H. Horst, JAGC, USN, Appellate Defense Counsel.

LT Steven D. Moore, JAGC, USNR, Appellate Government Counsel.

Before NEWTON, DUNBAR and GLADIS, JJ.

NEWTON, Senior Judge:

This appellant pleaded not guilty to being an unauthorized absentee from the Naval Support Activity, Philadelphia, from 25 February 1974 until 12 February 1976.

A general court-martial with members found him guilty of unauthorized absence from the Support Activity during the period from 25 August 1974 until 12 February 1976—in effect reducing the period of absence by adding 6 months to the commencement date alleged in the specification. The sentence awarded and previously approved consists of a bad conduct discharge and confinement for 1 month.

Official documents—service record entries—proffered to the court as prosecution evidence showed commencement and termination of the absence as alleged in the specification before the court.

Appellant in testimony to the court stated he sought an undesirable discharge resultant from contemplated disciplinary action for a previous unauthorized absence. He further maintained he was advised he was granted leave and was sent home to await that discharge, subject to recall if it was decided to take disciplinary action against him. He went home. He did not hear again from the Navy until late November 1974 when his father received a letter concerning disposition of his personal effects stored from the previous absence. The letter noted that due to the nature of discharge the appellant was not entitled to receive his uniforms. About 13 months later appellant received orders from the Chief of Naval Personnel advising him that records showed he was a deserter since 25 February 1974. Appellant began inquiries as to his military status and ultimately surrendered to authorities on 12 February 1976.

The remainder of the evidence of record is essentially negative in character—e. g., no effort by appellant to inquire as to his status until December 1974 and no showing some required reports were made on the absence alleged. Nowhere does the date 25 August 1974 appear in the record, prior to findings of guilt.

In his instructions to the court members the trial judge advised that:

. . . as long as the accused operated under an honest and reasonable mistake of fact, he is not guilty of being absent without proper authority. Should you find, beyond a reasonable doubt, that at some time later than 25 February 1974, the accused was disabused of such mistaken belief and no longer honestly and reasonably believed himself an authorized absentee, then you may find the accused guilty of an unauthorized absence commencing at a time which you have no reasonable doubt that the accused was absence [sic] without proper authority. (R. 95).

The court members' reasons for their findings remain a secret. It is clear that appellant's guilt of an unauthorized absence commencing on 25 February 1974 was not accepted by the members, for he was acquitted of that offense. Thus, the issue to be resolved is whether appellant may be convicted of the absence offense found by the court, whereby the commencement date of the absence was changed to a later date as permitted by the military judge's instructions on findings.

▉▉ The puzzlement of the trial judge as to the substance of the offense of unauthorized absence is appreciated. That an unauthorized absence is committed the instant the absence commences and that it is not a continuing offense seems clear. *United States v. Lovell*, 7 U.S.C.M.A. 445, 22 C.M.R. 235 (1956); *United States v. Harris*, 21 U.S.C.M.A. 590, 45 C.M.R. 364 (1972). Further, it is clearly implicit in recent decisions by the United States Court of Military Appeals that the commencement date of an unauthorized absence may be lawfully changed to a later date than that alleged. *United States v. Harris, supra; United States v. Davis*, 22 U.S.C.M.A. 241, 46 C.M.R. 241 (1973).

How then may an "instantaneous" offense occur later during the absence than alleged, without substantially changing the offense? It must be concluded that it does only because of the peculiar nature of the unauthorized absence offense itself. The offense requires a commencement date, lack of authority to be absent and a return date. The latter date is necessary to show the severity of the offense and to determine the maximum punishment. Each of these elements is amalgamated into the whole offense of unauthorized absence. The commencement date of the absence may vary dependent on the facts and circumstances in each case, for it is but one offense. Although the offense is not a continuing offense, the circumstances involved in a given case may show the absence commenced at a date later than that alleged and still be a part of the same offense. Such is the construction of the law of unauthorized absence, as amplified by case law, considered applicable to this case. *See* Winthrop, Military Law and Precedents, 255 (2d ed. rev. 1920), and citations, *supra*.

The foregoing principles may be melded into a rule of law just as the military judge did in his instruction to the court. No error is apparent in the instruction when taken in the abstract sense, based on case law and logic. The instruction and the law leave the court free to choose any date within a 717-day time span as the commencement date of the single absence, if it is convinced of that date beyond reasonable doubt. It appears that is exactly the occurrence which took place at this trial. Since the instruction was correct the application of that law to the case must be examined.

▉ The problem in the case lies in the evidentiary proof available for use in determining guilt. Examination of the record fails to show what, if any, evidence led the court to conclude the absence commenced on 25 August 1974. No citation of evidence establishing that date is found in the briefs before this court—the Government seemingly contends the court concluded the appellant's mistake of fact was neither honest nor reasonable at the end of 6 months. No explanation is evident as to the reason a 6-month period of time is more appropriate to allow the appellant to recognize his mistake than any other time span over the

two-year period in issue. The evidence does not establish the commencement date of the absence beyond reasonable doubt—particularly when the appellant's belief that he was being discharged was buttressed by a letter from the Navy in November 1974, 9 months after he left the Navy. Mere speculation appears as the basis for ascertaining the commencement date of the unauthorized absence later than alleged. Speculation may not be the reason for criminal conviction. Proof is required.

The foregoing failure of proof requires the findings be disallowed. Such action obviates the need to address the remaining assignments of error set out by the appellant. However, in passing, the appellant's attack on the validity of the oath to the charge is specifically rejected. *United States v. Johnson,* 3 M.J. 623 (N.C.M.R.1977). The statute of limitations had not run. The first assignment of error is without merit.

The findings and sentence are set aside and the charge is dismissed.

Judge GLADIS concurs.

DUNBAR, Judge (Dissenting):

The evidence of record shows that appellant reported to Naval Support Activity, Philadephia, Pennsylvania, on 13 February 1974. Prior to this, appellant had completed boot camp in November of 1973 and had been transferred to the USS DONALD B BEARY (DE 10) via the Transient Personnel Barracks, Norfolk, Virginia. In December 1973, he became an unauthorized absentee from the transient barracks in Norfolk until he was apprehended by civilian police about 21 January 1974. Thereafter, according to a stipulation of record, appellant was confined at the Naval Correctional Center, Philadelphia, Pennsylvania, from 21 January 1974 until 20 February 1974. The Naval Support Activity, Philadelphia, prepared a record of unauthorized absence concerning appellant showing him to be in a status of unauthorized absence from 25 February 1974. This was entered in his service record as a page 6 document, NAVPERS 1070/606, dated 3 May 1974.

On 9 and 14 July and 10 August 1976 the appellant was tried by general court-martial at Naval Support Activity, Philadelphia, charged with unauthorized absence from 25 February 1974 until 12 February 1976.

To prove the Charge and Specification, the Government introduced four principal documents. Prosecution Exhibit 1 shows appellant was transferred to Naval Support Activity, Philadelphia, on 19 February 1974. Prosecution Exhibit 2, a NAVPERS 1070/606, prepared by Naval Support Activity, Philadelphia, shows appellant absented himself from the Naval Support Activity from 25 February 1974 until 12 February 1976. Prosecution Exhibit 3, a Transfer and Receipts Page, reflects appellant reported to the activity on 13 February 1974. Prosecution Exhibit 4, a NAVPERS 1070/606 dated 3 May 1974, shows appellant to be an unauthorized absentee on 25 February 1974.

At his trial, appellant took the position that he was not an unauthorized absentee during the period alleged, but had simply gone home, pursuant to properly issued leave papers, to await an administrative discharge.

Appellant testified that while he was in confinement during the period 21 January 1974 to 20 February 1974 he requested legal counsel. He later met with this counsel who took appellant and several others into a room and advised them that they were going to receive special courts-martial and it would be to their benefit to sign for an administrative discharge. Appellant states he signed up for the undesirable discharge and never saw the counsel again until he was released from confinement. At this time, the same counsel, whose name he does not remember, told him that he would be sent home on leave to await administrative discharge. Thereafter, appellant went to Building 75, Naval Support Activity, Philadelphia, purportedly picked up his leave papers and was told he would be on leave until he "received his discharge or had fur-

ther contact with the Navy." Unfortunately, appellant subsequently lost these leave papers. He testified, "I didn't think that I would have to appear in Court. So, I neglected them and they have been lost since then." Appellant never went to the disbursing office to be paid or to close out his pay record when he went home to await his discharge. Additionally, he left items of personal effects at the activity at the time of his departure. It is also noted that appellant testified repeatedly that he went to Building 75, ship's company office, to obtain his leave papers. He believed he went to the "second deck." Later, at an Article 39(a) session, the following colloquy occurred:

MJ: I would like to ask a question that struck me during the testimony of the accused. The accused said that he went to the ship's company office at Building 75. Wasn't the ship's company office in Building 104 at that time?

ACC: Yes, it was, your Honor. I made a mistake.

DC: Excuse me, your Honor, I object to the witness being cross-examined.

MJ: I didn't ask your client. He came out and answered me, counselor. Obviously, I don't address the accused. You have been in my court for two years now.

DC: That wasn't clear at all, your Honor. Apparently, he assumed that you were addressing him.

MJ: I was not addressing your client, counselor. Of course, I will disregard what he said. I have never addressed him before during this colloquy between counsel.

MJ: Morsfield, don't respond unless you're actually addressed. Do you understand?

ACC: Yes, sir.

MJ: Mr. Ryan is a very, very fine attorney, as you know. He's doing an excellent job, an outstanding job in representing you. So, allow him to speak, all right?

ACC: Yes, sir.

After going on the alleged leave, appellant stayed with his parents for a short time, then moved in with his mother-in-law.

Appellant's defense counsel introduced Defense Exhibits A thru C into evidence; they had been received in the mail by appellant's father. The documents, dated 26 November 1974, notify the father that his son's miscellaneous civilian clothing and personal gear would be sold unless he forwarded shipping charges in the amount of $2.35. The last page of the document reflects the signature of appellant's father disclaiming ownership of the clothing. Appellant testified on cross-examination that this letter to his father gave him the impression that "they" were working on his discharge.

Appellant claims he received no documents from the Navy until approximately December 1975, when he received a letter from the Chief of Naval Personnel notifying him that he was a deserter. [Defense Exhibits D and E]. He asserts that after receiving the letter he was in contact with the Bureau of Naval Personnel and the Reserve Center in Cleveland, Ohio, on several occasions. Appellant offered no evidence as to the names of the persons he talked to in the Bureau or at the reserve center or the substance of the conversations. Appellant also testified that he wrote a letter to the Bureau of Naval Personnel concerning his status. He could not, however, remember to whom he addressed the letter, the date of the letter or exactly what information was contained therein.

At the conclusion of the trial, the military judge instructed the members concerning the elements of the offense. The instructions contained the following guidance:

Now, as long as the accused operated under an honest and reasonable mistake of fact, he is not guilty of being absent without proper authority. Should you find, beyond a reasonable doubt, that at some time later than 25 February 1974, the accused was disabused of such mistaken belief and no longer honestly and reasonably believed himself an authorized absentee, then you may find the accused

guilty of an unauthorized absence commencing at a time which you have no reasonable doubt that the accused was absence [sic] without proper authority. (R. 95).

The court members, therefore, had the alternative of finding appellant guilty of the entire absence period or for a mere portion of the absence commencing on that which date the members had no doubt appellant was or should have been aware that he was in a state of wrongdoing.

In my opinion, the evidence presented by appellant to rebut the presumption of guilt created by introduction of official documents relating to his absence was patently implausible, unworthy of belief and failed to rebut that presumption.

However, the fact that the court members may have chosen to avoid the honest and reasonable mistake of fact issue does not invalidate the efficacy of their ultimate determination that, whether or not a mistake of fact existed in the first instance, appellant was in a status of unauthorized absence on 25 August 1974 and should have known so.

I failed to comprehend the metaphysical speculations of my learned brothers as to "how may an 'instantaneous' offense occur later during the absence than alleged, without substantially changing the offense?"

I believe that the findings of the court are in consonance with the evidence and the instructions of the military judge. Consequently, I would affirm the findings and sentence as approved below.