**UNITED STATES**

v.

**Marcus G. RINGER, 259 15 0334, Seaman Apprentice (E–2), U. S. Naval Reserve.**

**NMCM 82 3505.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 14 April 1982.

Decided 17 Nov. 1982.

CDR Matthew J. Wheeler, JAGC, USNR, Appellate Defense Counsel.

LCDR Jeanne Carroll, JAGC, USN, Appellate Defense Counsel.

CDR Richard A. Monteith, JAGC, USN, Appellate Government Counsel.

Before BOHLEN, GORMLEY and BYRNE, JJ.

BYRNE, Judge:

Seaman Apprentice Ringer was convicted of two specifications of unauthorized absence in violation of Article 86 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886 at a special court-martial. The military judge sentenced him to be confined at hard labor for three months, to forfeit $350 per month for three months, to be reduced to pay grade E–1, and to be discharged from the naval service with a bad-conduct discharge.

Seaman Apprentice Ringer pled not guilty to one of the two unauthorized absence specifications. As to this specification, a service record entry [Record of Unauthorized Absence (P601–6R)] showed his unauthorized absence began at 1900 on March 18, 1981, and terminated at 1415 on November 6, 1981, the dates alleged in the specification.

To rebut the Government's service record entry, trial defense counsel offered a tattered Leave Authorization form (3065R1). The form stated Seaman Apprentice Ringer was authorized fifteen days leave, beginning at 1530 on March 23, 1981, and ending at 0700 on April 6, 1981, a period of time located in the middle of his alleged unauthorized absence period.

The authorization to take leave was signed by Lieutenant Commander Griggs. Other completed boxes on the Leave Authorization, signed by Aviation Storekeeper Third Class Wooten, state that Seaman Ap-

prentice Ringer *departed on leave* at 1020 on March 18, 1981; five days *before* the leave was to take effect and approximately nine hours *before* the official documents previously mentioned declared him to be an unauthorized absentee.

To authenticate the Leave Authorization form, the defense counsel called his only witness, Petty Officer Wooten. One of Petty Officer Wooten's duties as a yeoman in the command's Supply Department was to state, on the form, the time and day of departure of Navy personnel authorized leave and to then sign them out on leave on the form. Although Petty Officer Wooten did not specifically remember signing Seaman Apprentice Ringer out on leave, he did identify his own signature and that of Lieutenant Commander Griggs on the Leave Authorization.[1]

Petty Officer Wooten also testified as follows:

> I remember the name "Ringer," sir, but as far as remembering signing, no, sir. It depends—like, I sign so many, like, you know, they come into the office and they say, "Sign my leave papers," they come in to pick up their leave papers and I turn it in to them, you know—well, they say, "I'm going on leave such and such a date" and I go ahead and just sign them out.

We assume the departure signature on the Leave Authorization was obtained by Seaman Apprentice Ringer in the manner described by Petty Officer Wooten.

DID THE STATEMENT THAT APPELLANT DEPARTED ON LEAVE PRIOR TO THE SPECIFIED BEGINNING DATE ON HIS LEAVE AUTHORIZATION AUTHORIZE AN EARLY LEAVE DEPARTURE?

■ It did not. Petty Officer Wooten's duties were to type up leave papers and sign Navy personnel out on leave. There is no indication he possessed authority to authorize early departures. We conclude that

Petty Officer Wooten's signature indicating an early *departure* on leave did not *authorize* additional leave beyond that specified in the Leave Authorization.

DID THE SIGN–OUT OF APPELLANT ON LEAVE ON MARCH 18, 1981, EFFECTUATE A DEPARTURE ON LEAVE FIVE DAYS LATER WHILE APPELLANT WAS IN AN UNAUTHORIZED ABSENCE STATUS?

■ It did not.

Initially, we note that the Leave Authorization form specifying the hour and date of departure states "Departed on Leave." Obviously, since Seaman Apprentice Ringer could not have departed on leave prior to 1530 on March 23, 1981 (the day and hour specified in his Leave Authorization for his leave to begin), a statement that he departed at an earlier time did not change his status.

Further, Petty Officer Wooten testified that the procedure used for checking Navy personnel out on leave in the Supply Department of the command relied upon a statement from the individual taking leave as to when his leave began. Abuse of such a check-out system, no matter how lax, cannot be translated into a valid check-out for the day authorized. To hold otherwise would be to benefit those few personnel whose personal word cannot be relied upon—a circumstance that is counterproductive to the interests of high morale, good order and discipline in the naval service.

DID THE APPROVED LEAVE AUTHORIZATION TERMINATE APPELLANT'S UNAUTHORIZED LEAVE STATUS?

It did not.

■ Once an unauthorized absence begins, it is presumed to continue until terminated by the exercise of military control

---

1. For purposes of this case, we assume the signatures of Lieutenant Commander Griggs and Petty Officer Wooten were genuine.

over the absentee. *United States v. Grover,* 10 U.S.C.M.A. 91, 27 C.M.R. 165 (1958); *United States v. Creamer,* 1 U.S.C.M.A. 267, 3 C.M.R. 1 (1952).[2] The approved leave authorization did not, by itself, return Seaman Apprentice Ringer to military control.[3]

Leave authorizations are always subject to revocation because of unexpected operational requirements or other military exigencies. They can also be revoked by placing a serviceman on restriction in lieu of arrest pending appropriate disciplinary action—which could well have happened to Seaman Apprentice Ringer if he had returned to military control from his unauthorized absence. *See United States v. Wheeler,* 21 C.M.R. 456, 457 (A.B.R.1956). Suffice it to say that there are many legitimate military reasons for revoking leave, either before the authorization date or during the leave period itself. To permit a servicemember to obtain irrevocable leave by absenting himself without authority would adversely affect the interests of high morale, good order and discipline in the military services.

This case falls in line with *United States v. Klunk,* 3 U.S.C.M.A. 92, 11 C.M.R. 92 (1953) wherein it was held that expiration of an unauthorized absentee's enlistment did not terminate his absence without leave. The Court stated:

> Hence—until the regular processes of discharge have been completed, a Naval enlisted man's status as one subject to military control remains unchanged, the expiration of his enlistment through lapse of time notwithstanding.

*Id.* at 94.

■ Like the serviceman in *Klunk,* Seaman Apprentice Ringer had certain acts that had to be completed before he would have been authorized to depart on leave: he had to terminate his unauthorized absence *and* he had to properly check-out on leave sometime after the time specified for his leave to begin.

Since Seaman Apprentice Ringer did not terminate his unauthorized absence or properly check-out on leave, the observation of the United States Court of Military Appeals in *Klunk* applies to this case:

> One who renders impossible the accomplishment of these procedures through his own unauthorized absence is without standing to complain.

The findings and sentence as approved on review below are affirmed.

Senior Judge BOHLEN and Judge GORMLEY concur.

---

**2.** Absence without leave is not a continuing offense, but is complete when the individual first so absents himself. *United States v. Lovell,* 7 U.S.C.M.A. 445, 22 C.M.R. 235 (1956). But, absence without leave is of a continuing *duration. United States v. Skipper,* 1 C.M.R. 581 (C.G.B.R.1951).

**3.** *United States v. Wheeler,* 21 C.M.R. 456 (A.B.R.1956) is distinguishable. Private Wheeler had been granted leave from December 19, 1955, to December 26, 1955, and been notified his leave was ready and waiting for him in his company orderly room. Instead of picking up the papers, Private Wheeler departed his command. The Army Board of Review held his absence was authorized. But, unlike this Navy case, there apparently was no departure-on-leave checkout procedure in the Army at that time. *United States v. Edwards,* 18 C.M.R. 830 (A.F.B.R.1955) is also distinguishable. Basic Airman Edwards was charged with unauthorized absence for exceeding the bounds of a pass. It was held that he was not an unauthorized absentee because he "was granted permission from any and all places of military duty over the weekend..." *Id.* at 833. As a result, there "was no place of duty he was required to be during this interval." *Id.* Seaman Apprentice Ringer, on the other hand, had not been authorized leave to begin on the first day of his absence and he had a command from which he was absent on that date.